**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **S & H INDUSTRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil No. 3:11-CV-2988-M-BH** |
| | § | |
| **KARL SELANDER,** *doing business as* | § | |
| **Atcoa Inc. aka Air Tool Corp of America, and** | § | |
| **ATCOA, INC.,** *also known as* **Air Tool Corp.** | § | |
| **of America,** | § | |
| | § | |
| **Defendants.** | § | **Pretrial Management** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated January 3, 2012, this case has been automatically referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Plaintiff S & H Industries, Inc.'s Motion for Summary Judgment*, filed June 27, 2012 (doc. 34), and Defendant Karl Selander's *Trial Movant Request*, filed July 31, 2012 (doc. 39). Based on the relevant filings and applicable law, the motion for summary judgment should be **GRANTED**, and the request should be **DENIED as moot**.

## I. BACKGROUND

S & H Industries, Inc. (Plaintiff), sues Karl Selander, d/b/a ATCOA Inc. a/k/a Air Tool Corp of America (Defendant),[1] for alleged violations of §§ 32 and 43(a) of the Lanham Act,[2] and for unfair competition and trademark dilution under Texas law. (*See* doc. 1.) Plaintiff also seeks entry

---

[1] Plaintiff voluntarily dismissed two other defendants on December 28, 2011. (*See* doc. 15.) In addition, there is a pending recommendation to strike the claims and/or defenses of a separately named defendant, ATCOA, Inc. a/k/a Air Tool Corp. of America, and to declare default against it. (*See* doc. 22.)

[2] *See* 15 U.S.C. §§ 1114 & 1125(a)-(b).

of a permanent injunction pursuant to 15 U.S.C. § 1116 and TEX. BUS. & COM. CODE ANN. § 16.29 (West 2011), and an award of costs and attorney fees pursuant to 15 U.S.C. § 1117. (*Id*.)

Plaintiff is the registered owner of the mark VIKING (the Mark) and the stylized VIKING logo (the Logo) issued by the United States Patent and Trademark Office.[3] (Doc. 36 at 9-16, 106, 109-110.)[4] Allan Air Products, Inc., registered the Mark on December 14, 1993, for use in connection with the manufacture and sales of hand-held pneumatic power tools, including filing, sanding, and drilling tools, and replacement parts for the tools. (*Id*. at 9, 11.) Allan Air Products, Inc., assigned the Mark to Viking Air Tool Company, Inc., on September 1, 1993, and on August 14, 2003, Viking Air Tool Company, Inc., transferred the Mark to Viking Industries. (*Id*. at 11.) On March 2004, Viking Industries began using the Logo in commerce with the manufacture and sales of the same goods and services associated with the Mark. (*Id*. at 10.) Viking Industries obtained a registration for the Logo on January 17, 2006. (*Id*.) On May 1, 2006, Plaintiff acquired the Mark and the Logo (including the applicable registrations) from Viking Industries pursuant to an asset purchase agreement and trademark assignment. (*Id*. at 11-12, 106, 109-10.) Since the asset purchase, Plaintiff has been involved in the manufacture and sale of hand-held air-operated power tools, e.g., filing, sanding and drilling tools, in connection with both the Mark and the Logo. (*Id*. at 107.) Plaintiff has used the Mark and the Logo to promote its goods and services through advertising, attendance at trade shows, in meetings with potential customers and on its website, www.shindustries.com. (*Id*. at 96-101, 107.)

In June 2010, Plaintiff learned that Defendant was using the Mark without authorization to

---

[3] The applicable registration numbers are No. 1,810,473 (the Mark) and No. 3,043,482 (the Logo).

[4] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing. (Doc. 36 at 9-10.)

market his hand-held pneumatic power tools. (*Id*. at 107.) Plaintiff's attorney wrote to Defendant on June 8, 2010, advising him of Plaintiff's rights to the Mark in connection with sanding and drilling tools, and demanding that Defendant refrain from further unauthorized use of the Mark. (*Id*. at 107, 111-12.) On June 29, 2010, Defendant's attorney responded in writing, representing that Defendant had agreed to stop using the Mark in connection with sales of air-operated in-line sanding and drilling tools, and that Defendant would also destroy certain documents, materials, electronic files and products with the Mark. (*Id*. at 107, 113-14.) Defendant's counsel also represented that Defendant's website (which displayed the Mark) had been de-activated. (*Id*. at 114.) Defendant now maintains that his attorney's response letter was unauthorized in that it does not accurately reflect his position as communicated in discussions with counsel. (Doc. 38 at 1.)

In September 2011, Plaintiff learned that Defendant was still using its marks in conjunction with the sale of hand-held pneumatic power tools used for filing and sanding. (*Id*. at 107.) In particular, Defendant had created two websites, www.atcoa.com and www.atcoaairtools.com, to promote his goods and services. (*Id*. at 17-29, 66-67, 102-05.) On the websites, Defendant acknowledged he had notice that Plaintiff owned the Mark, but nonetheless continued to use it to advertise and identify his power tools on the websites. (*Id*. at 22-29.) Defendant also made repeated use of the Mark in online advertising and promotional activities, including YouTube videos, Twitter feeds, and numerous press releases on several websites such as www.blogspot.com, www.businessnewspoint.com, www.pressreleaseforfree.com, www.businessdatapress.com, and www.dallasbackpage.com. (*Id*. at 30-60, 82-95.) In some instances, Defendant's websites and internet advertisements characterized Plaintiff's products as "knock offs" and "clones" and referred to Plaintiff as a thief that "stole an American Legend." (*Id*. at 34-41.) Defendant continued to use

the Mark as late as June 2012.  (Doc. 36 at 8, 66, 82-96.)

Plaintiff filed suit against Defendant on November 1, 2011.  (*See* doc. 1.)  It now moves for summary judgment.  (*See* docs. 34-36.)  The *pro se* Defendant filed a request that may be liberally construed as a cross-motion for summary judgment.  (*See* doc. 39.)  The motions have been fully briefed and are ripe for decision.

## II. OBJECTIONS

Plaintiff objects to Defendant's response on grounds that it is nothing more than a series of inadmissible hearsay statements.  (Doc. 40 at 2.)  It also objects to the single exhibit attached to Defendant's response as not properly authenticated under Federal Rule of Evidence 901.  (*Id.*)  Even if considered, these filings do not affect the disposition of the pending motion for summary judgment, so Plaintiff's objections are **OVERRULED as moot**.  *See Ennis Transp. Co. v. Richter*, No. 3:08-CV-2206-BH, 2011 WL 3702727, at *2 (N.D. Tex. Aug. 22, 2011) (citing *Continental Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2006 WL 984690, at *1 n. 6 (N.D. Tex. Apr. 4, 2006)).

## III.  MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on each of its Lanham Act and Texas state law claims.  (*See* docs. 34 and 35.)  It also moves for permanent injunctive relief and an award of attorneys fees.  (*Id.*)

### A.  Summary Judgment Standard

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998).  "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (per curiam) (citing Fed. R. Civ. P. 56(c)(1)).

**B.      Trademark Infringement Under § 32**

Plaintiff moves for summary judgment on its trademark infringement claim under § 32 of the Lanham Act, 15 U.S.C. § 1114.  (Doc. 35 at 13-16.)

To prevail on a trademark infringement claim, a plaintiff must prove: (1) ownership of a legally protectible mark; and (2) a likelihood of confusion between the plaintiff's mark and a mark utilized by the defendant.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2012); *see also TGI Friday's Inc. v. Great Northwest Restaurants*, 652 F. Supp.2d 763, 767 (N.D. Tex. 2009).

In order to be legally protectible, a mark must be distinctive, e.g. "capable of distinguishing the [plaintiff's] goods from those of others."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).  "A registered mark is 'presumed to be distinctive.'"  *E. & J. Gallo Winery v. Spider Webs Ltd.*, 129 F. Supp.2d 1033, 1038 (S.D. Tex. 2001) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d. Cir. 1986) *aff'd* 286 F.3d 270 (5th Cir. 2002)).  It is "*prima facie* evidence of a mark's validity and of the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services."  *Amazing Spaces, Inc.*, 608 F.3d at 237; *see also* 15 U.S.C. §§ 1057(b) & 1115(a).  Where a mark has been in use for five continuous

years after the date of registration, the mark is considered "incontestable," and the registration "constitutes 'conclusive evidence' of [the] right to use the mark, subject only to the [ ] defenses enumerated in 15 U.S.C. § 1115(b)." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980); *see also* 15 U.S.C. § 1115(b).

In deciding whether a plaintiff has demonstrated a likelihood of confusion, courts consider: (1) the strength of the trademark at issue; (2) similarity of design; (3) similarity of product; (4) identity of retail outlets and purchasers; (5) identity of advertising media used; (6) the defendant's intent; and (7) actual confusion. *Interstate Battery Sys. of Am., Inc. v. Wright*, 811 F. Supp. 237, 241 (N.D. Tex. 1993) (citing *Soweco, Inc.*, 617 F.2d at 1185); *see also Amazing Spaces, Inc.*, 608 F.3d at 248 (citing *Board of Supervisors for La. State Univ. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008)).

To meet its summary judgment burden to establish ownership of a legally protectible mark, Plaintiff cites to evidence demonstrating that it owns registrations for both the Mark and the Logo, and that it uses its marks in conjunction with the manufacture and sale of hand-held pneumatic filing, sanding and drilling tools.  (*Id.* at 9-16, 106-07, 109-110.)  It cites evidence that its marks have been in use for five continuous years.  (*Id.*)  It also cites evidence demonstrating that Defendant has used reproductions, counterfeits, copies or imitations of the Mark in commerce, thereby creating a likelihood of confusion.  (*Id.* at 16-64, 66-67,  82-95.)  Plaintiff points to evidence that its marks are strong because the Mark has been used in commerce since 1982 and has been registered since 1993, and the Logo has been in use since 2004 and has been registered since 2006.  (*Id.* at 9-10, 68-70.)  Defendant has also used copies of the Mark to promote sales of hand-held air-operated sanding and filing tools–the same type of goods offered by Plaintiff and covered by the Mark; this is

evidence of both similarity of design and product.  (*Id*. at 9-10, 16-64, 66-67, 82-95.)  Plaintiff also

points to evidence that its products and those of Defendant have been marketed and sold to the same

consumers via the internet, e.g., customers in the automotive industry, and therefore proving identity

of customers and of advertising media.  (*Id*. at 17-29, 66-67, 96-101, 107.)  Finally, Plaintiff points

to Defendant's continued and conspicuous use of the Mark to promote his products after he received

notice of Plaintiff's right to the Mark as evidence of his intent to obtain benefit from Plaintiff's

trademark.  (*Id*. at 65, 111-114.)

Plaintiff's evidence on all elements of its trademark infringement claim is sufficient to shift

the burden to Defendant to identify evidence in the record raising a genuine issue of material fact.

The only argument he offers in response is that Plaintiff (or its predecessors) obtained registration

of the Mark by fraud (one of the defenses to incontestability under § 1115(b)).[5]  (Doc. 38 at 1-5.)

He points to the "first use" and first use "in commerce" dates listed on the registration issued to

Allan Air Products Inc. as evidence of a misstatement in connection with the application for

registration.  (Docs. 36 at 9; 38 at 1-5.)  Defendant contends that the 1993 registration claiming a

first use and first use in commerce date of March 1982 coincides with the date of abandonment of

an earlier registration for the Mark.  Defendant asserts that Allan Air Products first registered the

Mark in 1975 (claiming a first use in commerce date of 1966) and abandoned it in March 1982.

Other than his naked assertions, however, Defendant offers neither admissible evidence nor

authority to support his fraud argument.  *See Little*, 37 F.3d at 1075 (conclusory allegations and

unsubstantiated assertions do not satisfy a nonmovant's burden of demonstrating a material issue

---

[5]  In a document filed on August 27, 2012, Defendant asserts laches (another defense to incontestability under § 1115(b)).  *See* 15 U.S.C. § 1115(b)(9).  (*See* doc. 48.)  Even if Defendant's late submission (filed without leave) is considered, the recommendation that Plaintiff's motion be granted remains the same.  Defendant offered neither admissible evidence of specific facts nor any legal authority in support of his laches argument.

of fact); *see also Topalian*, 954 F.2d at 1131. Moreover, Defendant offered no evidence to refute

Plaintiff's showing that Defendant's unauthorized use of the Mark was likely to create confusion

in the minds of customers. Defendant has not adduced sufficient evidence to create a genuine issue

of material fact. *See Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. Plaintiff's motion for

summary judgment as to the issue of trademark infringement should be granted.

## C.      Unfair Competition Under Section 43(a) of the Lanham Act

Plaintiff moves for summary judgment on its unfair competition claim under Section 43(a)

of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). (Doc. 35 at 16-18.)

Unfair competition claims under the Lanham Act are governed by the same standard as those

for trademark infringement, e.g., the likelihood of confusion. *Scott Fetzer Co. v. House of Vacuums

Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *see also Matrix Essentials, Inc. v. Emporium Drug Mart*,

988 F.2d 587, 592 (5th Cir. 1993) ("As with trademark infringement, the touchstone of a section

1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause

confusion.'"). As noted, there is no genuine issue of material fact regarding whether Defendant's

actions were likely to result in confusion. Because no reasonable trier of fact could find in

Defendant's favor, Plaintiff's motion for summary judgment on the issue of unfair competition under

15 U.S.C. § 1125(a)(1)(A) should be granted. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

## D.      False Advertising Under Section 43(a)

Plaintiff moves for summary judgment on its false advertising claim under § 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (*Id.*)

To establish a prima facie case for false advertising under § 43(a), a plaintiff must show that

(1) the defendant made a false or misleading statement of fact about a product; (2) the statement

actually deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception is material in that it is likely to influence the consumer's purchasing decision; (4) the statement entered interstate commerce; and the plaintiff has been or is likely to be injured as a result. *See Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001); *see also MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 3:02-CV-2727-G, 2004 WL 833595, at *17 (N.D. Tex. Apr. 19, 2004).

If the statements at issue are shown to be literally false, a court must assume that the statements actually misled consumers, without requiring any evidence of their impact on consumers. *Logan*, 263 F.3d at 462; *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000). If the statements are either ambiguous or literally true but misleading, there is no such presumption, and a plaintiff must present evidence of actual consumer deception. *Pizza Hut*, 227 F.3d at 497. When seeking monetary damages, he must prove actual deception through direct evidence of actual consumer reaction to the advertising or through evidence of consumer surveys showing that a substantial number of consumers were actually misled by the advertisements. *See id.*; *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). When seeking injunctive relief, he must prove that the advertising statements "have a tendency to deceive consumers." *Pizza Hut*, 227 F.3d at 497 (internal quotations marks and citation omitted). This requires a showing that "at least some consumers were confused by the advertisements." *Id*.

Plaintiff points to Defendant's use of a copy or imitation of the Mark as evidence that Defendant made a false and misleading statement of fact regarding his affiliation, connection and association with Plaintiff and concerning the original, sponsorship and approval of his products by Plaintiff. (Doc. 36 at 17-64, 82-95.) It relies on the same evidence to show that Defendant's

unauthorized use of the Mark had a tendency to deceive customers. (*Id.*) Plaintiff points to Defendant's advertising and promotional materials as evidence that his deception was material because they imply that Defendant's products are linked to the goodwill, origin and quality that consumers associate with Plaintiff's marks. (*Id.*) Finally, Plaintiff presented evidence that Defendant disseminated the statement through its internet advertising, and therefore demonstrated that the statement entered interstate commerce. (*Id.*) It submitted a sworn declaration from Plaintiff's president, John Turk, stating that Defendant's actions detract from the value of Plaintiff's marks.. (*Id.* at 107-08.)

Plaintiff's evidence on all elements of its false advertising claim is sufficient to shift the burden to Defendant to identify evidence in the record raising a genuine issue of material fact. He offers only unsubstantiated assertions and conclusory allegations. Because Defendant has not adduced sufficient evidence to create a genuine fact issue, summary judgment as to Plaintiff's claim of false advertising under 15 U.S.C. § 1125(a)(1)(B) should be granted. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324.

## E. Unfair Competition/Misappropriation - State Law Claim

Plaintiff moves for summary judgment on its unfair competition claim under Texas common law. (Doc. 35 at 18-19.)

Unfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act. *See Amazing Spaces, Inc.*, 608 F.3d at 236 n. 7 ("A[n] . . . unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.") (quoting from *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n. 3 (Tex. App.—Austin 2001,

pet. denied) (internal quotation marks and citation omitted)); *see also Abraham v. Alpha Chi Omega*, 781 F.Supp.2d 396, 406 (N.D. Tex. 2011). As noted above, there is no genuine issue of material fact regarding the elements of Plaintiff's unfair competition claim under the Lanham Act. Because the issues presented by Plaintiff's Texas common law claim for unfair competition are the same as its claim under § 1125(a)(1)(A), no reasonable trier of fact could find in Defendant's favor on the state law claim. Plaintiff's motion for summary judgment on Plaintiff's state law claim of unfair competition should be granted. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

**F.      Trademark Dilution - State Law Claim**

Plaintiff moves for summary judgment on its trademark dilution claim pursuant to TEX. BUS. & COM. CODE ANN. § 16.29. (*Id*. at 19-20.)

Section 16.29 provides:

> A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.

TEX. BUS. & COM. CODE ANN. § 16.29.[6] In order to recover, a plaintiff must demonstrate that it owns a distinctive mark and that "there is a likelihood of dilution due to either 'blurring' or 'tarnishing.'" *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.—Dallas 2001, no pet.) (citing *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir. 1997). "A registered mark is 'presumed to be distinctive.'" *E. & J. Gallo Winery*, 129 F. Supp.2d at 1038 (citing *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 871). "Dilution by blurring occurs only when the plaintiff's trade name is used by another as his own trade name, thereby weakening the plaintiff's

---

[6] The statute was amended effective September 1, 2012. The prior version of the statute governs Plaintiff's claim for trademark dilution because it was in effect when Plaintiff filed its complaint. The quoted text is from the prior version of the statute.

ability to use the name as a unique identifier of its goods and services." *Express One Int'l*, 53 S.W.3d at 899 (citing *E. & J. Gallo Winery*, 129 F. Supp.2d at 1038; 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:103 (4th ed. 2000)). Dilution by tarnishing occurs when another uses it "in a manner that tarnishes or appropriates the goodwill and reputation associated with the name." *Id.* Tarnishing addresses instances in which a defendant uses "a trade name similar to that of the plaintiff on products that are markedly inferior or of a different quality and nature than those of the plaintiff." *Id.* at 899-900 (citing *Exxon Corp.*, 109 F.3d at 1084 n. 21).

As proof of the required elements of its claim for trademark dilution. Plaintiff points to its rights to the Mark and the Logo, and to the registration of the marks with the United States Patent and Trademark Office as evidence of the first element-- ownership of a distinctive mark. (Doc. 36 at 9-10.) Plaintiff also cites to evidence of Defendant's unauthorized use of the Mark to advertise his hand-held air-operated filing and sanding tools as evidence of dilution by blurring *and* tarnishing. (*Id.* at 17-64, 82-95.) It relies on the same evidence to demonstrate that Defendant's actions detracted from the unique character of the Mark and its exclusive association with Plaintiff's products and services. (*Id.*) Plaintiff also points to evidence that Defendant's websites and internet advertisements characterize Plaintiff's products as "knock offs" and "clones" and refer to Plaintiff as a thief that "stole an American Legend" as clear evidence that Defendant's use of the Mark tarnished the good will and reputation Plaintiff and its predecessors worked to build through use of the Mark and the Logo. (*Id.* at 34-41.)

Plaintiff's evidence is sufficient to shift the burden to Defendant to identify evidence in the record raising a genuine issue of material fact as to the elements of Plaintiff's trademark dilution

claim. Defendant has offered only unsubstantiated assertions and conclusory allegations. Because no reasonable trier of fact could find in Defendant's favor, Plaintiff's motion for summary judgment its § 16.29 claim should be granted. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

## G.     Remedies

### 1.     Permanent Injunction[7]

Plaintiff seeks a permanent injunction prohibiting Defendant's use of the Mark, the Logo, any colorable imitation of the Mark or the Logo, and any confusingly similar variations of either one pursuant to 15 U.S.C. § 1116(a) and TEX. BUS. & COM. CODE ANN. § 16.29.  (*Id*. at 21-22.)

To warrant entry of an injunction, a plaintiff must prove: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (in the context of patent law); *see also Mary Kay, Inc. v. Weber*, 661 F. Supp.2d 632, 639-40 (N.D. Tex. 2009) (in the context of the Lanham Act); *E & J Gallo Winery*, 286 F.3d at 279 (in the context of TEX. BUS. & COM. CODE ANN. § 16.29).  Whether to grant an injunction, and the proper scope of any injunctive relief, is committed to the sound discretion of the court.  *Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 126-27 (5th Cir. 1966); *see also Grand Time Corp. v. Watch Factory Corp.*, No. 3:08-CV-1770-K, 2011 WL 2412960, at *9 (N.D. Tex. June 10, 2011).

---

[7] Plaintiff contends it is entitled to Defendant's profits and any damages it sustained pursuant to 15 U.S.C. § 1117(a), and treble damages based on 15 U.S.C. § 1117(b).  (Doc. 36 at 21.)  It concedes that it is as yet unable to fully calculate Defendant's profits or the extent of actual damages it suffered due to Defendant's actions, and that it is therefore not presently seeking an award of profits and treble damages, but it reserves the right to pursue a damages award in the event that Defendant contests a judgment in its favor.  (*Id*.)

Here, the evidence supports entry of a permanent injunction. The same evidence that supported a likelihood of confusion with regard to Plaintiff's trademark infringement claim demonstrates the necessary irreparable harm.'" *Mary Kay, Inc.*, 661 F. Supp.2d at 640 ("[A] likelihood of confusion 'can constitute irreparable harm.'" ) (quoting from *Hawkins Pro-Cuts, Inc. v. DJT Hair, Inc.*, No. 3:96-CV-1728-R, 1997 WL 446458, at *7 (N.D. Tex. July 25, 1997)). Plaintiff's inability to control the quality of Defendant's goods and services is also probative of irreparable harm. *See Pro Hardware, Inc. v. Home Centers of Am., Inc.*, 607 F. Supp. 146, 154 (D.C. Tex. 1984) ("Plaintiffs will suffer an immediate and irreparable harm because they cannot control the quality of Defendant's goods . . . . Loss of control constitutes immediate and irreparable harm."). Plaintiff's loss of control also demonstrates that money damages cannot adequately compensate Plaintiff for Defendant's unauthorized use of the Mark. *Id.*, 607 F. Supp. at 154 (finding that loss of control made calculation of compensatory damages difficult); *see also Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 14 (1st Cir. 1986) ("[E]xposure to forces beyond [plaintiff's] control constituted irreparable injury, the consequences of which could not adequately be calculated at a later date in money.").

Furthermore, Plaintiff has presented evidence that it has invested considerable time, effort and expense in promoting the Mark and the Logo; therefore, the balance of hardships weighs in favor of granting an injunction. *See Pro Hardware, Inc.*, 607 F. Supp. at 154 (citing *Helene Curtis Indus. v. Church and Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir. 1977) (finding that equities favored a grant of injunctive relief to plaintiff that had built its mark into a valuable and essential business asset). Finally, the entry of an injunction comports with the public interest because it advances the purposes of the Lanham Act. *See Quantum Fitness Corp. v. Quantum LifeStyle*

*Centers, L.L.C.*, 83 F. Supp.2d 810, 832 (S.D. Tex. 1999) ("The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."); *American Rice, Inc. v. Ar. Rice Growers Coop. Ass'n*, 532 F. Supp. 1376, 1389 (D.C. Tex. 1982) ("[T]he public interest is served by enjoining unfair trade practices which occur within that commerce subject to the lawful regulation of Congress, thus upholding the purposes of the Lanham Act.") (citing *Steele v. Bulova Watch Co.*, 344 U.S. at 283-87 (1952).

The Court should enter a permanent injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendant from:

(1)     engaging in any acts or activities directly or indirectly calculated to trade upon the mark VIKING, for which Plaintiff owns United States Trademark Registration No. 1,810,473 (the "VIKING Mark") or the logo for which S & H owns United States Trademark Registration No. 3,043,482 (the "VIKING Logo"), including any further use of marks that are identical or confusingly similar to the VIKING Mark or the VIKING Logo;

(2)     directly or indirectly using in commerce a reproduction, counterfeit, copy, or colorable imitation of the VIKING Mark or VIKING Logo in connection with the sale, offering for sale, distribution, or advertisement of any goods and/or services, including hand-held, air-operated power tools, namely filing, sanding, and drilling tools and replacement parts therefore;

(3)     directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with the sale of products or services, including any representation that Defendant is affiliated with Plaintiff or that Plaintiff is imitating, copying, or reproducing Defendant's products;

(4)     passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of Plaintiff, any product or service that is not the product or service of Plaintiff, is not produced under the control or supervision of Plaintiff, is not approved by Plaintiff, or is not distributed with Plaintiff's express authorization;

(5)     using, publishing or distributing any product, press release, catalogue, advertisement, promotional material, e-mail, or video which either includes a mark that is identical or confusingly similar to the VIKING Mark or

VIKING Logo or is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant, Defendant's affiliated companies or Defendant's claimed products by or with Plaintiff, or which are otherwise presented so as to create the impression that they are products of Plaintiff or are distributed with the authorization of Plaintiff;

(6)      committing further acts that are likely to injure Plaintiff's business reputation or to dilute the distinctive quality of Plaintiff's trademarks in violation of Tex. Bus. & Com. Code § 16.29; and

(7)      otherwise engaging in competition with Plaintiff unfairly.

The Court should also order Defendant to file with the Court and serve upon counsel for Plaintiff a written report, sworn under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction within (30) days after the entry of the permanent injunction. *See* 15 U.S.C. § 1116(a).

## 2. Attorney's Fees

Plaintiff contends it is entitled to attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) because this is an exceptional case. (*Id.* at 22-23.)

The Lanham Act permits a prevailing plaintiff to recover its costs of action. 15 U.S.C. § 1117(a). The statute also authorizes the award of attorney fees in an "exceptional case." *Id.* An exceptional case is one in which the defendant's act "can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Seven-Up Co. v. Coco-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996) (quoting from *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992)); *see also Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co., Inc.*, 520 F.3d 393, 402 (5th Cir. 2008). A defendant's infringing acts are willful "if he knows his actions constitute an infringement; the actions need not have been malicious. Infringement can also be willful where a defendant acted with 'reckless disregard' for or 'willful blindness' to the rights of a [plaintiff].

Ignoring a cease-and-desist letter may constitute 'willful and deliberate' conduct." *Flowserve Corp. v. Hallmark Pump Co., Inc.*, 2011 WL 1527951, at *6 (S.D. Tex. Apr. 20, 2011) (internal quotation marks and citations omitted); *see also Chevron Intellectual Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3-4 (N.D. Tex. Aug. 24, 2009) (finding defendant acted willfully and deliberately when it ignored plaintiff's cease-and-desist letter).   Another factor courts consider in deciding whether a case is exceptional for purposes of § 1117(a) is  "existence or nonexistence of reasonable legal defenses."  *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002).  The plaintiff must demonstrate that the case is exceptional by clear and convincing evidence, and the decision regarding whether a case is exceptional is committed to the court's sound discretion. *Seven-Up Co.*, 86 F.3d at 1390.

       Here, Plaintiffs have shown that this is an exceptional case.   Even disregarding his attorney's representations, Defendant was clearly apprised of Plaintiff's rights in the Mark and the Logo in writing as early as June 2010.  Notwithstanding notice that Plaintiff held the registrations for both marks, and a demand that he cease and desist from  infringing activities, Defendant continued to use the Mark in connection with the manufacture, sale and service of hand-held pneumatic filing, sanding and drilling tools.  He continued to engage in unauthorized use of the Mark after Plaintiff filed suit against him and even up to the point at which Plaintiff moved for summary judgment in June 2012.  (Doc. 36 at 8, 66, 82-96.)  *See Flowserve Corp., Inc.*, 2011 WL 1527951, at *6; *Chevron Intellectual Prop., L.L.C.*, 2009 WL 2596610, at *3-4.   Moreover, Defendant offered no reasonable legal defense which would be indicative of his good faith.  *Procter & Gamble Co.*, 280 F.3d at 527.

       As this is an exceptional case, the Court should award Plaintiff its reasonable attorneys fees

as well as the costs of the action as authorized by 15 U.S.C. § 1117(a)-(b). The Court should permit

Plaintiff to recover attorney's fees in an amount to be determined pursuant to Federal Rule of Civil

Procedure 54(d)(2). Any motion filed by Plaintiff should address the lodestar analysis employed

by the Fifth Circuit in calculating reasonable attorney's fees. *See Chevron Intellectual Prop., LLC*,

2009 WL 2596610, at *4 (applying lodestar analysis in the context of an award of attorney's fees

under the Lanham Act); *T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 3:08-CV-00341, 2009

WL 2003369, at *5 (N.D. Tex. July 10, 2009) (same).

## IV. CROSS-MOTION FOR SUMMARY JUDGMENT

Based on his request that the Court dismiss this lawsuit, cancel the Mark, and award him

damages, Defendant's *pro se Trial Movant Request* may be liberally construed as a cross-motion for

summary judgment. (*See* doc. 39 at 7.) Based on the recommendation that Plaintiff's motion for

summary judgment be granted, Defendant's cross-motion should be denied as moot.

## V. RECOMMENDATION

The motion for summary judgment should be **GRANTED**, and the motion to dismiss should

be **DENIED as moot**. The Court should enter a permanent injunction, prohibiting Defendant from:

(1)    engaging in any acts or activities directly or indirectly calculated to trade upon the mark VIKING, for which Plaintiff owns United States Trademark Registration No. 1,810,473 (the "VIKING Mark") or the logo for which S & H owns United States Trademark Registration No. 3,043,482 (the "VIKING Logo"), including any further use of marks that are identical or confusingly similar to the VIKING Mark or the VIKING Logo;

(2)    directly or indirectly using in commerce a reproduction, counterfeit, copy, or colorable imitation of the VIKING Mark or VIKING Logo in connection with the sale, offering for sale, distribution, or advertisement of any goods and/or services, including hand-held, air-operated power tools, namely filing, sanding, and drilling tools and replacement parts therefore;

(3)    directly or indirectly using any false designation of origin, false or

misleading description of fact, or false or misleading representation of fact in connection with the sale of products or services, including any representation that Defendant is affiliated with Plaintiff or that Plaintiff is imitating, copying, or reproducing Defendant's products;

(4) passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of Plaintiff, any product or service that is not the product or service of Plaintiff, is not produced under the control or supervision of Plaintiff, is not approved by Plaintiff, or is not distributed with Plaintiff's express authorization;

(5) using, publishing or distributing any product, press release, catalogue, advertisement, promotional material, e-mail, or video which either includes a mark that is identical or confusingly similar to the VIKING Mark or VIKING Logo or is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant, Defendant's affiliated companies or Defendant's claimed products by or with Plaintiff, or which are otherwise presented so as to create the impression that they are products of Plaintiff or are distributed with the authorization of Plaintiff;

(6) committing further acts that are likely to injure Plaintiff's business reputation or to dilute the distinctive quality of Plaintiff's trademarks in violation of Tex. Bus. & Com. Code § 16.29; and

(7) otherwise engaging in competition with Plaintiff unfairly.

The order of injunction should require that Defendant file with the Court and serve upon counsel for Plaintiff a written report, sworn under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction within (30) days after the entry of the permanent injunction. Finally, the Court should find this to be an exceptional case and permit Plaintiff to recover attorney's fees in an amount to be determined in accordance with Federal Rule of Civil Procedure 54(d)(2).

**SO RECOMMENDED on this 13th day of February, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE