**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| S & H INDUSTRIES, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil No. 3:11-CV-2988-M-BH |
| | § | |
| KARL SELANDER, *doing business as* | § | |
| Atcoa Inc. aka Air Tool Corp of America, and | § | |
| ATCOA, INC., *also known as* Air Tool Corp. | § | |
| of America, | § | |
| | § | |
| **Defendants.** | § | **Pretrial Management** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated January 3, 2012, this case has been automatically referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Plaintiff S & H Industries, Inc.'s Motion for Award of Attorneys' Fees*, filed April 2, 2013 (doc. 61). Based on the relevant filings and applicable law, the motion for attorneys' fees should be **GRANTED** in part.

**I. BACKGROUND**

S & H Industries, Inc. (Plaintiff), sued Karl Selander, d/b/a ATCOA Inc. a/k/a Air Tool Corp of America (Defendant),[1] for alleged violations of §§ 32 and 43(a) of the Lanham Act,[2] and for unfair competition and trademark dilution under Texas law. (*See* doc. 1.) On June 27, 2012, Plaintiff moved for summary judgment, and Defendant filed what was construed as a cross-motion

---

[1] Plaintiff voluntarily dismissed two other defendants on December 28, 2011. (*See* doc. 15.) In addition, the claims and/or defenses of a separately named defendant, ATCOA, Inc. a/k/a Air Tool Corp. of America, were stricken, and it was found to be in default. (*See* doc. 58.)

[2] *See* 15 U.S.C. §§ 1114 & 1125(a)-(b).

for summary judgment on July 31, 2012. (Docs. 34, 39.) On February 13, 2013, it was recommended that Plaintiff's summary judgment motion and request for a permanent injunction be granted, and that Defendant's cross-motion be denied. (Doc. 51.) It was also recommended that Plaintiff be permitted to recover attorney's fees in an amount to be determined. (*Id.* at 17-19.) On March 19, 2013, the Court issued a final judgment and a permanent injunction against Defendant. (Docs. 57, 59.) Plaintiff now moves for an award of fees in the amount of $52,845.50. (Doc. 61.) The motion has been fully briefed and is ripe for decision.

## II. MOTION FOR AWARD OF ATTORNEYS' FEES

Having carried its burden to show that this case is exceptional and merits an award of attorneys' fees under the Lanham Act, (*see* doc. 51 at 17-19), Plaintiff now seeks fees in the amount of $52,845.50, (*see* doc. 61).

**A.     Attorneys' Fee Analysis Legal Standard**

The Lanham Act permits an award of reasonable attorney fees to a prevailing party in exceptional cases. 15 U.S.C. § 1117(a); *National Business Forms & Printing, Inc. v. Ford*, 671 F. 3d 526, 537 (5th Cir. 2012). In order to determine reasonable attorney fees, the Fifth Circuit first conducts the "lodestar" analysis. *See Matter of Fender*, 12 F.3d 480, 487 (5th Cir. 1994). The "lodestar" method requires a two-step analysis: (1) "determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer[]"; and (2) compute the appropriate lodestar amount "by multiplying the number of hours reasonably expended by the reasonable hourly rate." *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F.Supp. 979 at 985 (S.D. Tex. 1997) (quoting *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar amount is presumed

to be reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Enhancements to the lodestar amount can be awarded in "rare" and "exceptional" cases, however. *Id.* In fee-shifting cases, the Supreme Court noted three circumstances where enhancements could be reasonable: "(1) where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value; (2) if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted; and (3) in which an attorney's performance involves exceptional delay in the payment of fees." *Jackson v. Host Intern., Inc.*, 426 F. App'x 215, 227 (5th Cir. Feb. 1 2011) (quoting *Perdue*, 559 U.S. at 1674-75) (internal quotation marks omitted); *see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 664-65 (5th Cir. 2012).

**B.     Lodestar Method**

    **1.     Reasonable Hours and Reasonable Rates**

"Determinations of hours and rates are questions of fact." *La. Power & Light Co.*, 50 F.3d at 325 (citation omitted). "[C]ourts must determine whether the hours claimed were reasonably expended on the litigation." *Id.* (citation and internal quotation marks omitted). In order to determine the reasonable number of hours expended in this case, "[t]he party seeking attorney's fees must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "[T]he documentation must be sufficient for the court to verify that the applicant has met its burden." *Louisiana Power & Light Co.*, 50 F.3d at 325 (citation omitted).

Plaintiff submitted copies of attorney invoices with detailed time entries, covering the period from October 20, 2011 through February 28, 2013.[3] (Doc. 62-1 at 8-82.) Contemporaneous billing records are acceptable documentation for determination of reasonable hours. *See Bode v. United*

---

[3] Some entries were redacted on the basis of privilege or confidentiality. (Doc. 62-1 at 2.)

3

*States*, 919 F.2d 1044, 1047 (5th Cir. 1990).  Counsel for Plaintiff stated in his declaration that a total of 107.6 hours were spent in pursuing Plaintiff's case against Defendant.  (Doc. 62-1 at 2.)  This excludes 5.6 hours spent on resolving Plaintiff's claims against other defendants whom it dismissed, and legal assistant fees.  (*Id.*)

"[P]laintiff[ is] charged with the burden of showing the reasonableness of the hours [it] bill[s] and, accordingly, [is] charged with proving that [it] exercised billing judgment." *Walker v. U.S. Dept of Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996).  Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours[, and p]laintiffs submitting fee requests are *required* to exercise billing judgment." *Id.* (emphasis added).  "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).

Here, Plaintiff wrote off only 5.6 hours, including time spent on dismissed defendants and the 0.8 hours billed by a legal secretary. (*See* doc. 62-1 at 2, 53.)  A reduction of ten percent in place of the billing judgment is therefore appropriate in this case. *Id.* at 800; *see also Walker*, 99 F.3d at 770 (reducing the hours by 15%).  After the reduction, the total reasonable number of hours is 96.80.

Plaintiff also has the burden of showing that its attorneys' hourly rate is reasonable. *La. Power & Light Co.*, 50 F.3d at 324.  "Typically, the Court receives copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individual's litigation skills generally." *Neles-Jamesbury, Inc.*, 974 F.Supp. at 987 n.19  Further,

4

"[t]o inform and assist the court in the exercise of its discretion [in analyzing reasonable hourly rate], the burden is on the fee applicant to produce satisfactory evidence–*in addition to the attorney's own affidavits*–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to–for convenience–as the *prevailing market rate*." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (emphasis added).

Here, Plaintiff submits a copy of lead counsel's biographical information from his firm website and his declaration, which states that his associate's hourly rate of $450 in 2011, $490 in 2012, $520 in 2013, as well as his own hourly rate of $695 in 2011 and $720 in 2012, are "within the range of rates charged for attorneys of [his] and [the associate's] caliber and experience in the Dallas, Texas area." (Doc. 62-1 at 3.) Plaintiff contends that the total amount of fees sought, $52,845.50, divided by the number of billed hours, 107.60, results in a "blended" hourly rate of $491, which is reasonable in the Dallas, Texas area. (Doc. 62-1 at 3.)

Plaintiff did not submit evidence of the associate's background information, however. (*See* doc. 62-1 at 5-7); *see also Neles-Jamesbury, Inc.*, 974 F.Supp. at 987 n.19 (noting that no background information of the attorneys involved in the litigation were submitted). Of the 112.60 attorney hours in the invoices, 107 were billed by the associate. The lack of background information in the record for the associate, including his years of experience, undermines his hourly rates beginning at $480 and ending at $520. Plaintiff also failed to supply any supporting documentation to determine the prevailing market rate in the Dallas area.[6] *See Tollett v. City of Kemah*, 285 F.3d

---

[6]When the hourly rate is not objected to by the opposing party, some courts have accepted the fee applicant's asserted reasonable hourly rate. *See Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995). Defendant here has not filed any response to Plaintiff's fee application.

5

357, 368 (5th Cir. 2002) ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."); *Watkins v. Fordice*, 7 F.3d 454, 458 (5th Cir. 1993). Plaintiff failed to produce sufficient evidence for the Court to determine that requested hourly rate is reasonable; therefore, its rate should be reduced by ten percent. The only apparent concrete number that may be used for the reduction is the blended rate of $491, so the reasonable hourly rate after the ten percent reduction therefore is $441.90.

### 2. Compute the Lodestar Amount

The second step in the lodestar analysis is multiplying the reasonable hour expended on this case by the reasonable hourly rate. *La. Power & Light Co.*, 50 F.3d at 324. The Court has reduced the reasonable hours to 96.80, and concluded that the reasonable hourly rate is $441.90. Multiplying the two, the lodestar amount is: $42,775.92.

### C. *Purdue* Enhancements

Plaintiff argues that once the lodestar amount is calculated, the overall reasonableness of such amount is evaluated by the twelve factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) *overruled on other grounds Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). (Doc. 61 at 2.) The lodestar amount, however, is presumed reasonable and "the presumption is a 'strong' one." *Purdue*, 559 U.S. at 552. Traditionally, the Fifth Circuit first calculates the reasonable attorneys' fee amount using the lodestar method, then applies the *Johnson* factors for any enhancements or reductions from the lodestar amount. *See Saizan*, 448 F.3d at 799-800. In 2010, however, the Supreme Court in *Purdue* changed the fee-shifting jurisprudence. *See In re Pilgrim's Pride Corp*, 690 F.3d at 664-65. In the Supreme Court's "view, the *Johnson* factors are an alternative method to lodestar for calculating attorney's fees rather than factors upon which a

lodestar amount may be enhanced[.]" *Jackson*, 426 F. App'x at 226 (discussing *Purdue*); *see also In re Pilgrim's Pride Corp.*, 690 F.3d at 664 (discussing *Purdue*, the court noted that the Supreme Court "state[d] that the lodestar is the more favorable 'alternative' to the *Johnson* factors, indicating that the lodestar has superseded the *Johnson* factors in the fee-shifting arena."). Therefore, instead of applying the *Johnson* factors for reduction or enhancement of the lodestar amount, the Supreme Court listed three circumstances where the lodestar amount can be enhanced: "(1) where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value; (2) if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted; and (3) in which an attorney's performance involves exceptional delay in the payment of fees." *Jackson*, 426 F. App'x at 227 (quoting *Perdue*, 559 U.S. at 1674-75) (internal quotation marks omitted). As there is no evidence any of the three circumstances exist here, no enhancement should be applied.[7]

## V. RECOMMENDATION

The motion for award of attorneys' fees should be **GRANTED** in part in the amount of $42,775.92.

**SO RECOMMENDED on this 15th day of November, 2013.**

                                            IRMA CARRILLO RAMIREZ
                                            UNITED STATES MAGISTRATE JUDGE

---

[7] Some Fifth Circuit cases issued subsequent to the Supreme Court's *Purdue* opinion apply the older model of attorneys' fee analysis, blending the lodestar method and *Johnson* factors. *See Black v. SettlePou, P.C.*, 2013 WL 5612304, at *7 (5th Cir. Oct. 11, 2013); *Jimenez v. Wood County, Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010); *McClain v. Lufkin Indus. Inc.*, 649 F.3d 374, 380-81 (5th Cir. 2011). These cases, however, either fail to cite to *Purdue*, or fail to discuss the relevant portion of *Purdue* that favors explicitly the lodestar method over the *Johnson* factors in fee-shifting cases. *See id.*; *see also Purdue*, 559 U.S. at 550-52; *In re Pilgrim's Pride*, 690 F.3d at 664-65.

7

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

8