**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| S & H INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:11-CV-2988-M-BH |
| | § | |
| KARL SELANDER, *doing business as* | § | |
| Atcoa Inc. aka Air Tool Corp of America, and | § | |
| ATCOA, INC., *also known as* Air Tool Corp. | § | |
| of America, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated January 3, 2012, this case has been automatically referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Plaintiff S & H Industries, Inc.'s Motion for Contempt and Sanctions Against Defendant Karl Selander*, filed May 13, 2013 (doc. 65). Based on the relevant filings and applicable law, the motion should be **GRANTED**, and the defendant should be sanctioned and ordered to pay the plaintiff's attorneys' fees in the amount of $8,658.

**I. BACKGROUND**

S & H Industries, Inc. (Plaintiff), sued Karl Selander, d/b/a ATCOA Inc. a/k/a Air Tool Corp of America (Defendant), for alleged violations of §§ 32 and 43(a) of the Lanham Act[1] and unfair competition and trademark dilution under Texas law. (*See* doc. 1.) On March 19, 2013, the Court entered judgment in Plaintiff's favor on its claim that Defendant was infringing on Plaintiff's mark

---

[1] *See* 15 U.S.C. §§ 1114 & 1125(a)-(b).

and issued a permanent injunction against him. (Doc. 59.) The final judgment permanently enjoined Defendant from:

(1) engaging in any acts or activities directly or indirectly calculated to trade upon the mark VIKING, for which Plaintiff owns United States Trademark Registration No. 1,810,473 (the "VIKING Mark") or the logo for which S & H owns United States Trademark Registration No. 3,043,482 (the "VIKING Logo"), including any further use of marks that are identical or confusingly similar to the VIKING Mark or the VIKING Logo;

(2) directly or indirectly using in commerce a reproduction, counterfeit, copy, or colorable imitation of the VIKING Mark or VIKING Logo in connection with the sale, offering for sale, distribution, or advertisement of any goods and/or services, including hand-held, air-operated power tools, namely filing, sanding, and drilling tools and replacement parts therefore;

(3) directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with the sale of products or services, including any representation that Defendant is affiliated with Plaintiff or that Plaintiff is imitating, copying, or reproducing Defendant's products;

(4) passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of Plaintiff, any product or service that is not the product or service of Plaintiff, is not produced under the control or supervision of Plaintiff, is not approved by Plaintiff, or is not distributed with Plaintiff's express authorization;

(5) using, publishing or distributing any product, press release, catalogue, advertisement, promotional material, e-mail, or video which either includes a mark that is identical or confusingly similar to the VIKING Mark or VIKING Logo or is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant, Defendant's affiliated companies or Defendant's claimed products by or with Plaintiff, or which are otherwise presented so as to create the impression that they are products of Plaintiff or are distributed with the authorization of Plaintiff;

(6) committing further acts that are likely to injure Plaintiff's business reputation or to dilute the distinctive quality of Plaintiff's trademarks in violation of Tex. Bus. & Com. Code § 16.29; and

(7) otherwise engaging in competition with Plaintiff unfairly.

(Doc. 59 at 2-3.)

On May 13, 2013, Plaintiff moved to hold Defendant in contempt. (Doc. 65.) It claimed that on April 30, 2013, one of its customers advised that it had received a letter from Defendant claiming to have obtained a copyright registration for his "ATCOA Viking Sander[.]" (Doc. 66-1 at 5-6.) On May 9, 2013, the same customer informed Plaintiff that Defendant had sent certified letters to its branch offices asserting that his copyright registration covered "2D [and] 3D designs, texts, sketches, catalogs, Internet listings, magazine ads and brochures" of the "Original ATCOA Viking Filer/Sander" and offering license agreements. (Doc. 66-1 at 10.) The Court conducted a hearing on November 14, 2013, regarding Defendant's alleged contempt of the permanent injunction. (Doc. 76.) The parties introduced testimony and exhibits[2] establishing that Defendant mailed correspondence to Plaintiff's customer at least twice, once in April and once in May, alleging that he has a copyright registration of the Original ATCOA *Viking* Filer/Sander. Defendant admitted to sending the same letters to five or more companies and asserted that he was entitled to royalties derived from the use of similar products as his ATCOA *Viking* Filer/Sander. As a result of Defendant's correspondence, Plaintiff was required to assure its customer of the validity of its mark.

## II. MOTION FOR CONTEMPT

Plaintiff moves to hold Defendant in contempt for violating the permanent injunction issued on March 19, 2013. (Doc. 65 at 1, 4-5.)

---

[2]The exhibits included the following: (1) the final judgment and permanent injunction; (2) an e-mail correspondence between Plaintiff and its customer as well as a copy of Defendant's April 2013 letter; (3) an e-mail correspondence between Plaintiff and its customer as well as a copy of Defendant's May 2013 letter; (4) attorney billing invoice from May 2, 2013 through May 30, 2013; (5) attorney billing invoice from June 4, 2013 through June 17, 2013; (6) attorney billing invoice from October 18, 2013 through October 31, 2013; (7) another e-mail correspondence from Plaintiff's customer to Plaintiff informing it that Defendant had sent three certified letters offering license agreements; and (8) Defendant's various sanding tool documents.

"A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909 (5th Cir. 1987) (*citing Sec. and Exch. Comm'n v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 669 (5th Cir. 1981)). "A contempt order is civil in nature if the purpose of the order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 290-91 (5th Cir. 2002). To show that civil contempt is warranted, a moving party must establish "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). Intent is not an element of civil contempt; the issue is whether the alleged contemnor has complied with the court's order. *Whitfield*, 832 F.2d at 913. The standard of proof is clear and convincing evidence, which is "'that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case.'" *Travelhost Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). "The judicial contempt power is a potent weapon" that should not be used unless a specific aspect of the court' order has been "clearly violated." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's*, 177 F.3d 380, 383 (5th Cir. 1999).

Here, Plaintiff presented evidence that Defendant sent a series of communications to at least six companies. (*See* doc. 65 at 2-3.) Those communications asserted that Defendant had copyrighted the design and logo of the "Original ATCOA Viking Dual Filer/Sander," and that the

4

copyright was "actionable against infringement[.]" (Doc. 66-1 at 5-6.) He offered license agreements for the use of the allegedly copyrighted material. (Doc. 66-1 at 9-12.) These actions violate the permanent injunction issued on March 19, 2013. (*See* doc. 59.) The injunction expressly enjoined Defendant from using the mark VIKING or something confusingly similar related to hand-held or power tools; it specifically enjoined Defendant from using the VIKING mark on filing, sanding, and drilling tools. (Doc. 59 at 2.) By claiming the "Original ATCOA Viking Dual Filer/Sander" as his own, offering license agreements, and threatening legal consequences, Defendant has violated the permanent injunction against him. Plaintiff has met its burden to establish the three elements for civil contempt by clear and convincing evidence. *Travelhost, Inc.*, 68 F.3d at 961. Its motion for contempt should therefore be granted.

### III. MOTION FOR SANCTIONS

Plaintiff requests sanctions in the form of seeks attorneys' fees incurred as a result of his violation of the permanent injunction in the amount of $10,660.[3] (Doc. 65 at 5-6.) In the prayer of its motion, it also requests a fine, confinement, or both to compel Defendant's compliance with the permanent injunction, but this requested relief was not briefed. (*Id.*)

"Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)). In civil contempt cases, sanctions may be imposed to coerce compliance with the court's order, compensate for losses sustained as a result of the non-compliance, or both. *Am. Airlines, Inc.*, 228 F.3d at 585, citing *United States v. United Mine Workers of Am.*, 330 U.S. 258,

---

[3]The specific amount was requested at the November 14, 2013 hearing.

5

303 (1947). Civil contempt sanctions may include a fine (coercive, conditional or compensatory), imprisonment, a combination of a fine and imprisonment, and attorneys' fees incurred in obtaining the finding of contempt. *See S.E.C. v. Amerifirst Funding, Inc.*, 3:09-CV-601-D, 2006 WL 522124, *17 (N.D. Tex. Feb. 1, 2008), aff'd in part and vacated in part, *Whitcraft v. Brown,* 570 F.3d 268 (5th Cir. 2009); *U.S. v. Scott*, 4:03-CV-1410-A, 2004 WL 1068118, *3 (N.D. Tex. Apr. 5, 2004), citing *United Mine Workers v. Bagwell*, 512 U.S. 821, 827-29 (1994).

A.    **Fine and Imprisonment**

Here, Defendant mailed correspondence claiming ownership of the VIKING mark related to filers and sanders to at least six companies.

The primary purpose of a contempt sanction determines whether it is civil or criminal in nature. *Lamar Fin. Corp. v. Adams,* 918 F.2d 564, 566 (5th Cir.1990)). An order is viewed as criminal if intended to punish the contemnor and vindicate the authority of the court, and civil if intended to coerce the contemnor into compliance with a court order. *Id.* Although appropriate for either civil or criminal contempt, imprisonment is civil in nature if conditional and coercive, and criminal in nature if it is backward-looking and unconditional. *Id.* If an order is partly coercive and partly punitive, "the criminal feature of the order is dominant." *Port v. Heard,* 764 F.2d 423, 426 (5th Cir.1985).

Here, Plaintiff has provided no evidence of loss, so a fine would not be compensatory. *See Shafer v. Army & Air Force Exchange Service*, 376 F.3d 386, 398 (5th Cir. 2004). Nor would it be coercive because there is no "'opportunity to purge,' i.e., a 'subsequent opportunity to reduce or avoid the fine through compliance.'" *Id.,* citing *Bagwell*, 512 U.S. at 829 ("Where the fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge. Thus, a 'flat,

unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance."). Likewise, imposition of a term of imprisonment for Defendant's past conduct would be backward-looking and unconditional, and therefore criminal in nature. *Lamar Fin. Corp.,* 918 F.2d at 566. Plaintiff's request for the imposition of a fine or imprisonment should therefore be denied.

**B.     Attorneys' Fees**

As noted, courts have "discretion to award reasonable attorney's fees and other expenses necessary to make an innocent party whole" in a civil contempt proceeding. *Dow Chemical Co. v. Chemical Cleaning, Inc.*, 434 F.2d 1212, 1215 (5th Cir. 1970). Because Plaintiff has proven that Defendant violated the permanent injunction and that it incurred attorneys' fees in obtaining the finding of contempt, it should be awarded its fees. *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) ("Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees.").

In order to determine reasonable attorneys' fees in civil contempt proceeding, courts first conduct the "lodestar" analysis. *See Ultimate Living Int'l, Inc. v. Miracle Greens Supplements, Inc.*, No. 3:05-CV-1745-M, 2008 WL 4133083, *2 (N.D. Tex. Aug. 29, 2008). The "lodestar" method requires a two-step analysis: (1) "determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer[]"; and (2) compute the appropriate lodestar amount "by multiplying the number of hours reasonably expended by the reasonable hourly rate." *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F.Supp. 979 at 985 (S.D. Tex. 1997) (quoting *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)); *see also La. Power*

*& Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar amount is presumed to be reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Enhancements to the lodestar amount can be awarded in "rare" and "exceptional" cases, however. *Id.* In fee-shifting cases, the Supreme Court noted three circumstances where enhancements could be reasonable: "(1) where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value; (2) if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted; and (3) in which an attorney's performance involves exceptional delay in the payment of fees." *Jackson v. Host Intern., Inc.*, 426 F. App'x 215, 227 (5th Cir. Feb. 1 2011) (quoting *Perdue*, 559 U.S. at 1674-75) (internal quotation marks omitted); *see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 664-65 (5th Cir. 2012).

1. *Reasonable Hours and Rates*

"Determinations of hours and rates are questions of fact." *La. Power & Light Co.*, 50 F.3d at 325 (citation omitted). "[C]ourts must determine whether the hours claimed were reasonably expended on the litigation." *Id.* (citation and internal quotation marks omitted).

a. **Hours**

In order to determine the reasonable number of hours expended in this case, "[t]he party seeking attorney's fees must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "[T]he documentation must be sufficient for the court to verify that the applicant has met its burden." *Louisiana Power & Light Co.*, 50 F.3d at 325 (citation omitted).

At the hearing, Plaintiff submitted copies of attorney billing records with detailed time entries covering the period from May 2, 2013 through October 31, 2013. Contemporaneous billing

records are acceptable documentation for determination of reasonable hours. *See Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). Plaintiff's counsel spent a total of 20.5 hours, according to the attorney billing records and counsel's testimony.

"[P]laintiff[ is] charged with the burden of showing the reasonableness of the hours [it] bill[s] and, accordingly, [is] charged with proving that [it] exercised billing judgment." *Walker v. U.S. Dept of Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996). Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours[, and p]laintiffs submitting fee requests are *required* to exercise billing judgment." *Id.* (emphasis added). "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).

Here, the records do not reflect the exercise of billing judgment. A reduction of ten percent is therefore appropriate in this case. *Id.* at 800; *see also Walker*, 99 F.3d at 770 (reducing the hours by 15%). After the reduction, the total reasonable number of hours is 18.50.

   **b.**  **Rate**

Plaintiff also has the burden of showing that its attorneys' hourly rate is reasonable. *La. Power & Light Co.*, 50 F.3d at 324. "Typically, the Court receives copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individual's litigation skills generally." *Neles-Jamesbury, Inc.*, 974 F.Supp. at 987 n.19 Further, "[t]o inform and assist the court in the exercise of its discretion [in analyzing reasonable hourly rate], the burden is on the fee applicant to produce satisfactory evidence–*in addition to the attorney's own affidavits*–that the requested rates are in line with those prevailing in the community for similar

9

services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to–for convenience–as the *prevailing market rate*." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (emphasis added).

Here, Plaintiff submitted a copy of lead counsel's biographical information from his firm website and his declaration, which stated that his associate's hourly rate of $520 in 2013 was "within the range of rates charged for attorneys of [the associate's] caliber and experience in the Dallas, Texas area."[4] (Doc. 62-1 at 3.)

All of the relevant work on the motion for contempt was conducted by the associate. Plaintiff did not submit evidence of the associate's background information. (*See* doc. 62-1 at 5-7); *see also Neles-Jamesbury, Inc.*, 974 F.Supp. at 987 n.19 (reducing the hourly rate of an attorney, the court noted that no background information of the attorney was submitted). The lack of background information in the record for the associate, including years of experience, undermines his hourly rate of $520. Plaintiff also failed to supply any supporting documentation to determine the prevailing market rate in the Dallas area.[5] *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."); *Watkins v. Fordice*, 7 F.3d 454, 458 (5th Cir. 1993). Plaintiff failed to produce sufficient evidence for the Court to determine that requested hourly rate is reasonable; therefore, its rate should be reduced by ten percent. The reasonable hourly rate after the ten percent reduction is $468.

---

[4]Plaintiff relied on the same biographical information it had submitted in support of its Rule 54 motion for attorneys' fees, which was still pending at the time it filed its contempt motion. That information is the only evidence before the Court and was considered in determining the reasonableness of the fees here.

[5]When the hourly rate is not objected to by the opposing party, some courts have accepted the fee applicant's asserted reasonable hourly rate. *See Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995). Defendant here has not filed any objection to Plaintiff's motion.

### 2. Computation of Lodestar Amount

The second step in the lodestar analysis is multiplying the reasonable hours by the reasonable hourly rate. *La. Power & Light Co.*, 50 F.3d at 324. The Court has reduced the reasonable hours to 18.50, and concluded that the reasonable hourly rate is $468. Multiplying the two, the lodestar amount is $8,658. As there is no evidence in support and no parties have moved for enhancement or reduction from the lodestar amount, the lodestar amount is presumed reasonable. *Purdue*, 559 U.S. at 552.

### IV. RECOMMENDATION

The motion for contempt should be **GRANTED,** and Defendant should be sanctioned and ordered to pay Plaintiff $8,658 in reasonable attorneys' fees incurred in obtaining the finding of contempt.

**SO RECOMMENDED on this 24th day of February, 2014.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

12